**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed May 11, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00851-CV

---

## MICHAEL D. FENLEY, Appellant

## V.

## TEXAS PLUMBING SUPPLY COMPANY, INC., Appellee

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2018-10944**

---

## MEMORANDUM OPINION

Appellant Michael D. Fenley[1] worked for appellee Texas Plumbing Supply Company, Inc. for approximately seven months. After Fenley's employment was terminated, Fenley sued Texas Plumbing and asserted claims for discrimination and retaliation. The trial court granted Texas Plumbing's traditional and no-

---

[1] Fenley died while this case was pending in the trial court. Under the Texas Rules of Civil Procedure, Fenley's surviving spouse entered an appearance in the case to pursue Fenley's claims. *See* Tex. R. Civ. P. 151.

evidence motions for summary judgment and ordered that Fenley take nothing on his claims. For the reasons below, we affirm the trial court's judgment in part and reverse and remand in part.

<h2 style="text-align:center">BACKGROUND</h2>

Texas Plumbing is a wholesale retailer of plumbing supplies with two locations in Houston. In April 2016, Texas Plumbing hired Fenley as an inside salesperson for its southeast Houston store. Fenley was 70 years old when he was hired.

Texas Plumbing terminated Fenley's employment in November 2016. Fenley filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission. Fenley included a personal statement with the charge detailing the alleged discrimination:

> [Texas Plumbing] employed me to work in inside sales. In this position I handled calls from customers and prepared orders and price quotes. My immediate supervisor was Steve Anthony. I worked with a group of 4 persons, all of whom were involved in inside sales and reported to Anthony. I was the oldest sales person in my group. Anthony interviewed me for employment. He had known me for about fifteen (15) years or more when we worked together for another unrelated supply house.

> On May 20, 2016 I injured myself at work as a result of a fall and broke my finger. I was out for a period of days and returned to work doing inside sales on the date designated by the workman's comp surgeon selected by the carrier retained by Texas Plumbing Supply. This doctor performed a surgical procedure on my hand, which allowed me to work, but the procedure did not restore my hand to its original condition. When I returned to work after my surgery, [Texas Plumbing] gave me a hard time about my injury. [Texas Plumbing] was upset because I went to physical therapy ordered by its doctor, as well as the time periods I was scheduled to go. [Texas Plumbing] did not like the appointments arranged through workman's comp personnel and at the direction of the surgeon as those sessions took me

2

away from my work day. Steve Anthony gave me a hard time about this for time missed for therapy which was far from excessive and directed by workman's comp in an effort to regain use of my hand.

Anthony also made inappropriate comments about my age, both directly and indirectly. The comments were frequent and occurred almost daily: "you work too slow;" . . . "you need to pick it up a notch;" "you need to think about another job;" "you are too old for this job;" "I cannot protect you from Glen [Fuller, president of Texas Plumbing]." Anthony is in his 50s, and it is my belief that Fuller is as well.

Anthony was also not pleased with the fact that I had back problems. I have had back problems for about 25 years. I developed back problems when I lifted a water heater. I had surgery. I have an ADA placard but [Texas Plumbing] did not allow me to park in the front of the building. I was told to park on the far side of the building where I could find a place. . . . [Texas Plumbing] also complained that I would have to go to the doctor once a month to pick up medication for my back, which was also discussed in my initial interview.

After my surgery on June 2nd of 2016, my job responsibilities changed dramatically. I was directed away from my desk job to counter sales upon my return to work. This change necessitated the majority of my time to be spent standing as well as a significant amount of heavy lifting, contrary to the attending physician's recommendation.

On November 18, 2016, Anthony terminated my employment, telling me that [Texas Plumbing] was experiencing a layoff. . . . I was the only sales person to be terminated. For several months before I was terminated, Mr. Fuller sent emails to employees informing us that we had attained record sales in 2016. We were very busy. Customer trucks were at the store all the time, waiting to be waited upon.

In February 2018, Fenley sued Texas Plumbing and asserted claims for (1) age discrimination, (2) disability discrimination, and (3) retaliatory and wrongful termination based on Fenley's filing of a workers' compensation claim. Texas Plumbing filed traditional and no-evidence motions for summary judgment challenging all Fenley's claims. *See* Tex. R. Civ. P. 166a(c), (i). Fenley responded

to the motions and produced evidence, including the above-quoted personal statement filed with his charge of discrimination.

Texas Plumbing moved to strike portions of Fenley's evidence, which the trial court granted in part. On September 26, 2019, the trial court signed an order granting Texas Plumbing's traditional and no-evidence motions for summary judgment. Fenley timely appealed.

ANALYSIS

On appeal, Fenley challenges the grounds raised in Texas Plumbing's motions for summary judgment. Because Fenley does not challenge the trial court's order granting in part Texas Plumbing's motion to strike, we consider his appellate arguments in light of these evidentiary exclusions. *See, e.g., Walker v. Schion*, 420 S.W.3d 454, 457-58 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## I.      Standard of Review

We review the trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where, as here, the trial court's order granting summary judgment does not specify the grounds on which the trial court relied, we must affirm if any of the asserted grounds are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 44 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). When a party has filed both a traditional and no-evidence summary judgment motion, we generally review the propriety of the summary judgment under the no-evidence standard first. *Patidar v. Bank of Am., N.A.*, 442 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In a no-evidence motion for summary judgment, the movant asserts there is

no evidence of one or more essential elements of the claims on which the nonmovant would bear the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i), *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The nonmovant then must present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each challenged element. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). But the nonmovant "is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (internal quotation omitted).

The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848. If the movant produces evidence that conclusively establishes its right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise an issue of material fact. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## II. Age Discrimination Claim

In his original petition, Fenley asserted an age discrimination claim pursuant to the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code Ann. § 21.051.

Under the TCHRA, an employer commits an unlawful employment practice if, because of age, the employer refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. *See* Tex. Lab. Code Ann. § 21.051(1); *Hudgens v. Univ. of Tex. MD Anderson Cancer Ctr.*, 615 S.W.3d 634, 641 (Tex. App.—Houston [14th Dist.] 2020, no pet.). These provisions apply to alleged discrimination against an individual forty years of age or older. Tex. Lab. Code Ann. § 21.101. Because the Texas Legislature patterned TCHRA after federal law, our analysis of age discrimination claims looks to state cases as well as to the analogous federal statutes and the cases interpreting those statutes. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012); *see also Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("We therefore look to federal law to interpret TCHRA's provisions.").

Texas courts "follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof" in cases alleging disparate treatment based on age. *Garcia*, 372 S.W.3d at 634; *see also Hudgens*, 615 S.W.3d at 641. First, an employee can offer direct evidence of the employer's discriminatory actions or words. *Garcia*, 372 S.W.3d at 634. "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (internal quotation omitted). The second alternative entitles the employee to a rebuttable presumption of discrimination if the employee establishes a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634; *Hudgens*, 615 S.W.3d at 641.

Here, Fenley asserts his personal statement constitutes direct evidence of a

discriminatory animus based on Anthony's statements and remarks. On this point, Fenley's personal statement asserts:

> Anthony also made inappropriate comments about my age, both directly and indirectly. The comments were frequent and occurred almost daily: "you work too slow;" . . . "you need to pick it up a notch;" "you need to think about another job;" "you are too old for this job;" "I cannot protect you from Glen [Fuller, president of Texas Plumbing]." Anthony is in his 50s, and it is my belief that Fuller is as well.

Anthony denied making these statements in his affidavit included with Texas Plumbing's traditional motion for summary judgment.

Age-related comments may constitute direct evidence of discrimination if the statements are (1) age related, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (5th Cir. 2019); *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 593 (Tex. 2008) (per curiam). The comments must be more than mere "stray remarks." *McMichael*, 934 F.3d at 457; *see, e.g., Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at *6 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.) (managers' comment that employee was "old and stubborn" did not constitute direct evidence of age discrimination).

We recently examined comments similar to those at issue here in *Jefferson County v. Davis*, No. 14-13-00663-CV, 2014 WL 4262184 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, pet. denied) (mem. op.). There, the plaintiff-employee presented evidence at trial showing the head of her department repeatedly made ageist comments towards her, including that she was "too old to be working here," that she "should retire," and that she "was the next person to go." *Id*. at *5-6.

Concluding the evidence was legally sufficient to support the jury's finding that age was a motivating factor in the decision to terminate the plaintiff, we stated that "[a] comment such as 'you're too old to be working here' is a direct and unambiguous statement that would allow a reasonable jury to conclude that age was an impermissible factor in the decision to terminate [the plaintiff]." *Id*. at *6. Therefore, these statements constituted "direct evidence of a discriminatory animus." *Id*. at *5.

Several federal courts also have examined similar ageist remarks and concluded they constituted direct evidence sufficient to satisfy the plaintiff's summary judgment burden. *See Brewer v. New Era, Inc.*, 564 F. App'x 834, 839 (6th Cir. 2014) (statement from company's owner's son that the plaintiffs were "too old" and "needed to retire" was direct evidence that the plaintiffs' ages were a factor in the decision to terminate their employment); *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1202-03, 1204-05 (11th Cir. 2010) (chief executive's statements that the plaintiff was "too old to be working here" and that he "need[ed] someone younger" was direct evidence of age discrimination); *Barr v. Stripes LLC*, No. 4:18-CV-00296, 2020 WL 2576165, at *7 (S.D. Tex. May 21, 2020) (summary judgment burden met because evidence showed the manager called the plaintiff "old man" and "too old" and told him she "want[ed] to replace [him] with a 19-year-old"); and *Cristain v. Hunter Bldgs. & Mfg., LP*, No. H-16-2462, 2017 WL 2633565, at *4 (S.D. Tex. June 19, 2017) (manager's statements that the plaintiff was "old and not worth anything" was direct evidence of age discrimination).

Guided by this caselaw, we conclude Fenley's personal statement constitutes direct evidence of Texas Plumbing's discriminatory animus with respect to Fenley's firing. According to Fenley, Anthony told him: "you work too slow;"

"you need to pick it up a notch;" "you need to think about another job;" and "you are too old for this job." Considering this evidence in the light most favorable to Fenley, these statements support the conclusion that age was a factor in Texas Plumbing's decision to terminate him. *See Jefferson Cty.*, 2014 WL 4262184, at *5-6; *see also Brewer*, 564 F. App'x at 839; *Mora*, 597 F.3d at 1202-03, 1204-05; *Barr*, 2020 WL 2576165, at *7; and *Cristain*, 2017 WL 2633565, at *4.

The summary judgment evidence also shows that these statements were made (1) close in time to the employment decision, and (2) by an individual with authority over the employment decision. *See McMichael*, 934 F.3d at 457; *Autozone, Inc.*, 272 S.W.3d at 593. According to Fenley's personal statement, Anthony's comments "were frequent and occurred almost daily." Considering this evidence in the light most favorable to Fenley, it supports an inference that the statements were made close in time to his termination. Anthony's affidavit also shows he had authority over the employment decision at issue and that he "made the ultimate decision to terminate Mr. Fenley's employment." This evidence is sufficient to satisfy Fenley's summary judgment burden with respect to his age discrimination claim.

Texas Plumbing argues on appeal that it is entitled to the "same-actor inference," which permits an inference that an employment decision was not motivated by a discriminatory animus when an employee is hired and fired by the same decisionmaker. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000) (describing inference). Texas Plumbing points out that Anthony was the same person who hired and terminated Fenley.

Although the "same actor inference" creates a strong inference that discrimination was not a determining factor with respect to a challenged employment decision, "it does not 'automatically dispose of a plaintiff's

9

discrimination claim.'" *Collier v. Indel, Inc.*, No. H-07-1096, 2008 WL 11389546, at *10 (S.D. Tex. Oct. 17, 2008) (quoting *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 901 (E.D. Tex. 2004)). Moreover, federal courts have held that the inference may be rebutted by direct evidence of a discriminatory animus. *See, e.g., Sampson v. Vita-Mix Corp.*, No. 17cv233-GPC (BGS), 2018 WL 3064486, at *11 (S.D. Cal. June 21, 2018) ("even if the same actor inference applies, it is rebutted by the direct evidence of discriminatory animus based on racial comments"); *E.E.O.C. v. 704 HTL Operating, LCC*, 979 F. Supp. 2d 1220, 1232 (D. N.M. 2013) ("The 'same actor' doctrine does not apply where an employee proffers direct evidence in support of her Title VII claim."). Here, considered in conjunction with the direct evidence supporting Fenley's age discrimination claim, the "same actor inference" does not entitle Texas Plumbing to summary judgment. *See Sampson*, 2018 WL 3064486, at *11; *E.E.O.C.*, 979 F. Supp. 2d at 1232.

Texas Plumbing also contends Fenley's age discrimination claim must fail because Fenley "did not show he was replaced by someone outside his protected class." This argument is premised on one of the elements that must be shown to establish a prima facie case of age discrimination.[2] *See Garcia*, 372 S.W.3d at 642; *Jefferson Cty.*, 2014 WL 4262184, at *2. But this showing need not be made where, as here, the plaintiff produces direct evidence of a discriminatory animus. *See Garcia*, 372 S.W.3d at 638 (the prima-facie-case framework "allows a plaintiff who *lacks* direct evidence to raise an inference of discrimination") (emphasis added); *see also Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 782 (5th Cir. 2015) ("If direct evidence of discrimination exists, no further evidence is

---

[2] Specifically, to establish a prima facie case of age discrimination, a plaintiff-employee must show he was: (1) a member of a class protected by the TCHRA (*i.e.*, at least forty years old); (2) qualified for his employment position; (3) terminated by the employer; and (4) replaced by someone younger. *Garcia*, 372 S.W.3d at 638, 642.

10

required.").

We sustain Fenley's challenge to the trial court's summary judgment on his age discrimination claim.

## III.    Disability Discrimination Claim

In his original petition, Fenley asserted a TCHRA cause of action for disability discrimination and alleged Texas Plumbing (1) treated him less favorably because of his disability, and (2) failed to accommodate his disability. *See* Tex. Lab. Code Ann. § 21.051. Challenging these allegations in its no-evidence summary judgment motion, Texas Plumbing asserted Fenley could not produce any evidence showing he had a "disability" as defined by the TCHRA.

The TCHRA prohibits discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." Tex. Lab. Code Ann. § 21.105. To establish a prima facie case of discrimination based on disability, a plaintiff must show that he (1) has a disability, (2) is qualified for the job, and (3) suffered an adverse employment decision because of the disability. *Rogers v. Houston Cmty. Coll.*, No. 14-18-00591-CV, 2020 WL 3967944, at *1 (Tex. App.—Houston [14th Dist.] July 14, 2020, no pet.) (mem. op.).

Elements of a claim for an employer's failure to accommodate a disability overlap to some extent with the elements of a disability discrimination claim. *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 439 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). For a failure to accommodate claim, the plaintiff must show (1) he has a disability, (2) an employer covered by the statute had notice of his disability, (3) with "'reasonable accommodations'" he could perform the "'essential functions'" of his position, and (4) the employer

11

refused to make such accommodations. *Id*. (quoting *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 524 (Tex. App.—El Paso 2013, no pet.)).

A "disability" is defined as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such impairment, or being regarded as having such an impairment." Tex. Lab. Code Ann. § 21.002(6); *accord* 42 U.S.C.A. § 12102(1).[3] "To be considered a disability, the 'impairment's impact must . . . be permanent or long-term.'" *El Paso Cty. v. Vasquez*, 508 S.W.3d 626, 639 (Tex. App.—El Paso 2016, pet. denied) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)).

"Major life activity" includes, but is not limited to, physical activities such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, [and] bending". Tex. Lab. Code Ann. § 21.002(11-a); *see also Vasquez*, 508 S.W.3d at 639. An impairment "substantially limits" a person's major life activity when he is:

> [u]nable to perform a major life activity that the average person of the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 474 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *Tex. Dep't of Fam. & Protective Servs. v. Howard*, 429 S.W.3d 782, 787 (Tex. App.—Dallas 2014, pet. denied)). "To survive summary judgment, a plaintiff must produce evidence demonstrating that

---

[3] As with age discrimination claims, our analysis of TCHRA disability discrimination claims "consider[s] federal civil rights law as well as our own caselaw." *City of Houston v. Proler*, 437 S.W.3d 529, 532 (Tex. 2014).

12

his impairment is profound enough and of sufficient duration, given the nature of his impairment, to significantly restrict him in working." *Id*.

Here, Fenley asserts his "bad back" and broken finger constitute "disabilities" within the meaning of the TCHRA. But Fenley did not produce the summary judgment evidence necessary to make this showing.

To support his contention that his "bad back" is a disability, Fenley points to the following passage from his personal statement:

> Anthony was also not pleased with the fact that I had back problems. I have had back problems for about 25 years. I developed back problems when I lifted a water heater. I had surgery. I have an ADA placard but [Texas Plumbing] did not allow me to park in the front of the building. I was told to park on the far side of the building where I could find a place. . . . [Texas Plumbing] also complained that I would have to go to the doctor once a month to pick up medication for my back, which was also discussed in my initial interview.

Fenley did not produce any other evidence to substantiate his back problems.

This paragraph from Fenley's personal statement does not satisfy his summary judgment burden with respect to whether his back problems constitute a "disability" as defined by the TCHRA. Specifically, Fenley did not produce any evidence showing how his back problems "substantially limit[ed] at least one major life activity" or otherwise affected him. *See* Tex. Lab. Code Ann. § 21.002(6); *Datar*, 518 S.W.3d at 474. Without this evidence, Fenley did not raise an issue of fact regarding whether his back problems constitute a "disability." *See Tucker v. Unitech Training Acad., Inc.*, 783 F. App'x 397, 399-400 (5th Cir. 2019) (the plaintiff did not satisfy her summary judgment burden with respect to her disability discrimination claim because she did not produce any evidence showing how her alleged disability "substantially limited a major life activity"); *Taylor v. Schwan's Glob. Supply Chain*, No. 4:15-CV-2570, 2016 WL 11547481,

13

at *7 (S.D. Tex. Dec. 7, 2016) (same).

With respect to his broken finger, Fenley's personal statement asserts the injury occurred at work on May 20, 2016, and required surgery. Fenley also submitted into evidence nine "Texas Workers' Compensation Work Status Reports" completed with respect to his injury, which outline Fenley's activity restrictions and follow-up treatment. The final report states that Fenley is permitted to return to work on August 26, 2016 "without restrictions."

Based on the final work status report, Fenley's broken finger did not cause any long-term impairment with respect to Fenley's performance of his job. Fenley did not submit any other evidence showing his broken finger caused any other activity limitations after this date. Therefore, Fenley did not satisfy his burden to produce evidence showing his broken finger constituted a permanent or long-term impairment that substantially limited his performance of a major life activity. *See* Tex. Lab. Code Ann. § 21.002(6); *Vasquez*, 508 S.W.3d at 639.

In sum, Fenley did not produce evidence raising an issue of fact with respect to whether his "bad back" or broken finger constitute "disabilities" under the TCHRA. Therefore, Fenley did not satisfy his summary judgment burden on his disability discrimination claim and we overrule his challenge to the trial court's summary judgment on this claim.

## IV.     Retaliation for Filing a Workers' Compensation Claim

Finally, Fenley asserted a workers' compensation retaliatory discharge claim, contending he "was terminated because he incurred an injury on the job, reported it, and pursued a workers' compensation claim in good faith." Specifically, Fenley asserts his employment was terminated because he filed a workers' compensation claim after he fell at work in May 2016 and broke his

finger.

Under Texas Labor Code section 451.001, an employer may not discharge, or in any other manner discriminate against, an employee because that employee has filed a workers' compensation claim in good faith. *See* Tex. Lab. Code Ann. § 451.001; *Salas v. Fluor Daniel Servs. Corp.*, 616 S.W.3d 137, 145 (Tex. App.—Houston [14th Dist.] 2020, pet. filed). Claims brought pursuant to section 451.001 are analyzed using a burden-shifting framework under which the plaintiff must first make a prima facie case of retaliation and show: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the filing of a workers' compensation claim and his termination. *See Salas*, 616 S.W.3d at 146; *Datar*, 518 S.W.3d at 477.

With respect to the "causal connection" prong, the employee need not show his participation in the protected conduct was the sole cause of his discharge; it is sufficient to show that, but for the filing of the claim, "the employer's action would not have occurred when it did had the report not been made." *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *accord Salas*, 616 S.W.3d at 146. Circumstantial evidence, and reasonable inferences from that evidence, can prove the requisite causal connection. *Salas*, 616 S.W.3d at 146. Circumstantial evidence sufficient to show a causal link between an employee's termination and his protected conduct may include: (1) knowledge of the employee's protected conduct by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id*. "Close timing between the employee's protected activity and the adverse employment action is also relevant circumstantial evidence of a

15

causal link and of retaliatory motive." *Id*. This evidence may be considered when determining whether an employee established a prima facie case as well as for the ultimate issue of whether the employee proved a retaliatory motive for the adverse employment action. *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

If the employee establishes a prima facie case, the burden shifts to the employer to "rebut the alleged discrimination by showing there was a legitimate reason behind the discharge." *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451. If the employer brings forth a legitimate, non-discriminatory reason for the termination, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive to survive a summary judgment motion. *Salas*, 616 S.W.3d at 146.

Here, we presume without deciding that the summary judgment evidence is sufficient to make a prima facie case of retaliation. The burden then shifts to Texas Plumbing to rebut the alleged retaliation by showing there was a legitimate reason for Fenley's termination. Addressing this point, Texas Plumbing argues Fenley was terminated because he was Texas Plumbing's lowest-performing sales person. To support this contention, Texas Plumbing references the following statement from Glenn Fuller's affidavit:

> As president and owner of [Texas Plumbing], I am familiar with its sales and business records and information. . . . During Mr. Fenley's employment, sales at the Branch 1 location [where Fenley worked] decreased by 14%, while sales at [Texas Plumbing's] other locations increased. More specifically, Branch 1 location sales decreased by 3.6 percent in May 2016, by 13.6 percent in June 2016, by 14.5 percent in July 2016, by 19.4 percent in August 2016, by 21.1 [percent] in September 2016, and by 17.4 percent in October 2016. While Branch 1 was experiencing a steady decline in sales, [Texas Plumbing's] other locations were experiencing increased sales

percentages up to 14 percent. In November 2016, [Texas Plumbing] made a business decision to terminate Mr. Fenley's employment because he was [the] lowest performing sales person out of all [Texas Plumbing's] locations. The following month, sales at the Branch 1 location increased by 5.1 percent. Steven Anthony, Branch Manager of [Texas Plumbing's] Branch 1 location, made the ultimate decision to terminate Mr. Fenley's employment because he was the lowest performing sales person.

Reiterating this reasoning, Anthony asserted in his affidavit that he "made the ultimate decision to terminate Mr. Fenley's employment because [Fenley] was the lowest performing sales person."

Texas Plumbing also cites a September 16, 2016 email from Fuller to Texas Pluming's managers which states, in relevant part:

**Managers** — YTD sales comparing 2015 to 2016 are up 12.75% company wide. See below to understand how your branch sales compare.

|      | YTD 2015   | YTD 2016   | % variance |
| ---- | ---------- | ---------- | ---------- |
| br1  | 5,303,000  | 4,581,000  | - 14%      |
| br2  | 19,467,000 | 19,893,000 | + 2.5%     |
| br3  | 888,183    | 1,018,713  | + 13%      |
| br4  | 13,886,000 | 16,162,000 | + 14%      |

According to Texas Plumbing, this email further supports Texas Plumbing's contention that Fenley was terminated because Branch 1 (where Fenley worked) had a substantial reduction in sales that necessitated the termination of a sales person.

Because Texas Plumbing produced evidence showing there was a legitimate, nondiscriminatory reason for Fenley's termination, the burden shifted back to Fenley to produce controverting evidence of a retaliatory motive. *Salas*, 616 S.W.3d at 146. We conclude Fenley did not make this showing with respect to his

retaliation claim.

According to Fenley's personal statement, he fell at work on May 20, 2016, and sustained a broken finger. Fenley sought medical treatment and, in June 2016, underwent surgery on his hand. Fenley submitted into evidence nine "Texas Workers' Compensation Work Status Reports" completed by his attending physician from May 23, 2016 through August 26, 2016. The final work status report states that Fenley is permitted to return to work "without restrictions" as of August 26, 2016.

Fenley's employment with Texas Plumbing was terminated approximately six months after he filed his workers' compensation claim and three months after the claim was resolved and Fenley was permitted to return to work without any restrictions. The amount of time that elapsed between these events counsels against the conclusion that Fenley's November 2016 termination was retaliation for his filing of a workers' compensation claim. *See, e.g., Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 523 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("We hold that four months between the filing of the claim and termination, without more, does not raise a fact issue as to a causal link, when the stated grounds for termination reached fruition within the same period."); *see also Gonzales v. Dupont Powder Coatings USA, Inc.*, 546 F. App'x 378, 379 (5th Cir. 2013) (per curiam) ("We agree that the passage of six months here is too great a delay to support a causal connection."); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (finding five-month period between protected activity and adverse employment action did not establish prima facie retaliation claim)

Moreover, Fenley did not produce any evidence showing Texas Plumbing's proffered reason for Fenley's termination was mere pretext for termination in

18

retaliation for filing a workers' compensation claim. *See Salas*, 616 S.W.3d at 146. Specifically, Fenley did not produce any evidence raising an issue of fact as to whether (1) Branch 1 sales had decreased significantly in 2016, or (2) Fenley was the lowest-performing salesperson at Branch 1. Fenley did not produce any evidence suggesting his November 2016 termination from Texas Plumbing was related to his filing a workers' compensation claim.

Because Fenley did not satisfy his burden to produce evidence of a retaliatory motive underlying his November 2016 termination from Texas Plumbing, we overrule his challenge to the trial court's summary judgment on his retaliation claim.

## CONCLUSION

We affirm the trial court's summary judgment with respect to Fenley's (1) TCHRA disability discrimination claim, and (2) Texas Labor Code section 451.001 retaliation claim. We reverse the trial court's summary judgment with respect to Fenley's TCHRA age discrimination claim and remand for further proceedings consistent with this opinion.


/s/     Meagan Hassan
        Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.